The bill in this cause seeks to enjoin the defendant from pursuing a suit at law, in ejectment, in the New Jersey supreme court, which suit affects that portion of the bed of the defendant's lake occupied by a wharf or pier erected by complainants herein, adjoining their lot bordering on the edge of the lake. A temporary restraint was granted, pending the final hearing of this cause.
On August 13th, 1927, by an agreement in writing, Medford Lakes Corporation sold to complainants herein two lots designated as Nos. 9 and 10, block 34, plan A of Medford Lakes in-the-Pines summer colony, for $2,500. The deed *Page 466 
for these lots was dated April 19th, 1928, and recorded on May 8th, 1928. The lots in question constitute together a plot of land having a frontage on Stokes road, known as the County road, of about one hundred feet, and extending at right angles to Stokes road about one hundred and six feet to the shore line of Lower Aetna lake, which is one of a series of lakes in the Medford lakes development. Sometime prior to the complainants' agreement to purchase these lots the Medford Lakes Corporation had published and distributed a pamphlet which came into the hands of the complainants, as well as other prospective purchasers of lots, which pamphlet was illustrated and prepared in an attractive form and issued for the purpose of attracting purchasers for these lots. Among other things this pamphlet set forth:
"The desirability of any summer resort depends to a great extent on its facilities for boating and bathing. In these two diversions Medford Lakes in-the-Pines leaves nothing to be desired; almost every lake contains a section of splendid white sand bathing beach, where the slope is gradual, insuring safety for the children and plenty of depth for the bolder swimmers. These bathing centers will be protected with ropes and guards, and diving boards will be installed at convenient spots. The facilities for boating and canoeing are unlimited. Practically all the lakes are indented with shaded nooks and coves, affording quiet and restful retreat for those who prefer solitude.
"All the Land Owners automatically become Members of the Medford Lakes in-the-Pines Colony Club WITHOUT ADDITIONAL CHARGE and will be privileged to use the club house and enjoy its many advantages.
"This is a brief story of Medford Lakes in-the-Pines Summer Colony, which we invite you to join. Cabin and bungalow sites are now laid out and ready for the purchaser. The lots are mostly 5000 sq. ft. (50 x 100) depending on the topography of the ground. They will be sold singly or in groups according to the desire of the purchaser, and the membership to the Colony Club is included in the transaction."
The complainants purchased these lots through a salesman of Medford Lakes Corporation, a Mr. Fitzgerald, and at the time he was negotiating with the complainants, Fitzgerald represented to them that they could use the lake for all purposes, including the right to erect and maintain a wharf or pier. *Page 467 
The following covenant is contained in the deed made to complainants:
"Owners of lake front lots may erect and maintain wharves or piers on the lake subject to the consent of the Medford Lakes Corporation and its successors in the title to the lake bed. No motorboat or boat with auxiliary motor attached shall be used, operated or maintained on the lakes."
It was admitted by the defendant that the complainants were given the necessary consent by the Medford Lakes Corporation to erect and maintain the wharf or pier to which defendant herein now objects. The complainants in 1928 erected on these lots which were purchased by them, a cabin costing about $5,000, and also erected the pier or wharf at an additional cost of about $100, and have continued to occupy the cabin and use the pier or wharf ever since.
An unincorporated association was formed in 1928, known as Medford Lakes Colony Club, which the complainants joined; they continued their membership and paid dues for sometime, finally ceasing payment of dues because of their financial inability to continue. The complainants continued to receive notices or service bulletins from the Colony club from time to time, three of which were sent to them in January and March of 1929, having relation to clearing the bed of the lake of stumps and other obstructions when the lake was drained. In June, 1931, the defendant herein was incorporated as a corporation not for pecuniary profit, and in July, 1931, Medford Lakes Corporation conveyed to the defendant, numerous tracts of land, among which was the land lying within the bed of Lower Aetna Lake, which deed reserved to Medford Lakes Corporation and its successors and assigns, the right to enter upon any of the land or lake therein conveyed for the purpose of maintaining or developing any of the land and lakes in accordance with its general plan of development of the Medford Lakes tract, but that reservation did not create any obligation upon the Medford Lakes Corporation, its successors and assigns, to either develop or maintain any of the lands or lakes.
On April 20th, 1933, the defendant caused to be served *Page 468 
upon the complainant, Francis J. Schwarz, a notice, dated April 18th, 1933, as follows:
"By the terms of your deed to Lots Nos. 9 and 10, Section 34, Plan A, Medford Lakes in-the-Pines, in the Township of Medford, County of Burlington and State of New Jersey, it is provided that owners of lake front lots may erect and maintain wharves or piers on the lake subject to the consent of the Medford Lakes Corporation and its successors in title to the lake bed. This will advise you that the Medford Lakes Colony Club is the successors to the Medford Lakes Corporation in the title to the lake bed, having taken title by deed dated July 9, 1931, and recorded in the Clerk's Office in Burlington County in Book, page
"You are further notified that inasmuch as you are not a member of the Colony Club permission to maintain a wharf or pier in the lake is hereby withdrawn, effective immediately, and you are hereby notified to remove the same within five days after service upon you of this notice."
At the time of the service of this notice, the title to the lots was vested in the complainant, Emma L. Schwarz. There appears to be no proof of service of any notice upon her.
After the service of this notice, the defendant herein commenced an action in ejectment against the complainants herein in the New Jersey supreme court, to which suit reference has already been made.
It was established by the testimony of a number of witnesses that the pamphlet of the Medford Lakes Corporation had been distributed quite generally and that purchasers had been given to understand by agents of the Medford Lakes Corporation, the grantor of the defendant herein, that those who purchased lots would have the use of the lake; but the defendant contends that no rights were acquired by the complainants because of this pamphlet, and that such rights as were obtained under the covenant in the deed for the erection and maintenance of the wharf or pier in question were subject to be terminated at any time, and that complainants' right to the use of the lake upon which this pier or wharf is erected by the complainants, ceased upon their failure to pay their dues in the defendant corporation.
The complainants having obtained the consent to erect and maintain the wharf or pier, proceeded to do so almost *Page 469 
immediately after the logs were purchased, and have never been disturbed in their rights up until the time of the service of the notice and the commencing of the ejectment suit. The wharf or pier seems to be entirely a suitable one and does not interfere with the use of the lake, and appears from the testimony, to be in proper repair.
The whole scheme of the development of this enterprise as evidenced by the pamphlets contemplated the use of the lakes by the purchasers of lots, and the complainants undoubtedly acquired the right to erect and maintain this wharf or pier; while the Colony club was a great factor in maintaining the lake and grounds, and in providing means of recreation and entertainment for property owners and their friends, I am unable to determine that the complainants' rights, once acquired, could be denied them because of their inability to continue as members of this club, nor because of the withdrawal of permission to maintain the wharf or pier referred to in the notice served upon the complainant Francis J. Schwarz. Necessarily, the erection of the wharf or pier must be followed by its maintenance. If it was subject to removal at the whim of the defendant or its predecessor in title, the complainants would be deprived of valuable rights which they had acquired.
The defendant's right to pursue its suit in ejectment against complainants, must have as its basis the ownership of the fee to the land, which apparently it has, together with a revocation of the permission or license given to the complainants for the erection and maintenance of this wharf or pier, if such revocation can be legally exercised. In this case the complainant proceeded to erect and maintain the pier or wharf, and the attempted revocation of this permission would be operative as a fraud upon the licensee, the complainants, and a court of equity will protect the licensee against such revocation and preserve for the licensee such rights as the licensor expressly or impliedly conferred. This is applying the essential principles of estoppel.
I conclude that no sufficient ground existed upon which the complainants could be deprived of their rights to erect *Page 470 
and maintain this wharf or pier. It seems to me that the principle involved in this case, in that respect, is that referred to by Vice-Chancellor Leaming in the case of Polakoff
v. Halphen, 83 N.J. Eq. 126; 89 Atl. Rep. 996.
What the complainants acquired, as I see it, is an easement. They have no title to the land upon which the wharf or pier is erected. It may be that this private easement of the complainants would not constitute a good defense in the ejectment suit as a matter of law, as is indicated by the case of Jacobson v.Hayday, 83 N.J.L. 537; 83 Atl. Rep. 902; however, having concluded that the complainants legally acquired the right to erect and maintain the wharf or pier, they should not be disturbed in the proper enjoyment of that right, and the defendant will therefore be enjoined from maintaining its action in ejectment now pending in the New Jersey supreme court.